UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-30172-MAP

| | |
|---|---|
| ROBERT DADE,<br>  Plaintiff<br><br>v.<br><br>BOLAND BUILDERS, INC., THOMAS<br>M. BOLAND, STUART JONES AND<br>MARY ROSE JONES,<br>  Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) PLAINTIFF'S OPPOSITION TO MOTION<br> ) OF STEWART JONES AND MARY ROSE<br> ) JONES FOR SUMMARY JUDGMENT<br> ) <br> ) <br> ) <br> ) |

NOW COMES the Plaintiff, Robert Dade, and opposes the Motion of Stewart Jones and Mary Rose Jones for Summary Judgment.

## SUMMARY OF FACTS

Mary Rose Jones and Stewart Jones (the Joneses) hired Thomas Boland and Boland Builders, Inc. (Boland) to renovate their home in Huntington, Massachusetts. They retained at least some degree of control over the work in that: (1) they required Boland to hire Seamless Metals as the subcontractor to install the metal roof; and (2) they installed the new septic system. During the renovations, Boland cut the holes in the kitchen plywood subroof for the installation of skylights. The holes were covered with tarpaper, but not otherwise covered nor barricaded, nor were other warnings placed around them. They remained in that condition for several days or weeks. The Joneses knew the holes were in the roof, and all that Robert Dade and/or his co-workers would be on the roof installing the metal roof.

At no time before his accident was Robert Dade shown the skylights. Contrary to Defendants' assertions, Dade did not participate in a walkthrough in the kitchen, nor was he shown the skylights from inside the kitchen. On September 7, 2001, the day of the accident, Dade was on the roof with Boland who indicated vaguely where skylights "would be" installed, never informing him that the holes had been cut and hidden under tarpaper.

1

Later on that day, Robert Dade and his co-worker Michael Moffit were on the roof to measure the drip edge when he stepped into the hole and fell, injuring himself.

## ARGUMENT

**A.  Summary Judgment Standard**

Summary judgment must be denied if there exists a genuine issue of material fact, or if movant is not entitled to judgment as a matter of law. F. R. Civ. P. Rule 56(c); Celotex Corp. v. Catrett, 106 S.Ct. 2548, 477 U.S. 317 (1986). The court cannot resolve issues of credibility or the quality of the evidence. Woodman v. Haemonetics Corp., 51 F.3d 1087 (1st Cir. (Mass) 1995). All evidence must be strictly construed in the light most favorable to the nonmoving party. Johnson v. Educ. Testing Serv., 754 F.2d 20 (1st Cir. (Mass.) 1985), cert. den., 105 S.Ct. 3504, 472 U.S. 1029, 87 L.Ed.2d 635. Jackson Tool & Die Inc. v. Smith, 339 F.2d 88 (5th Cir. 1964). Summary judgment is an extreme remedy, and should not be granted unless it is clear beyond controversy that the moving party is entitled to judgment as a matter of law. U.S. v. Porter, 581 F.2d 698 (8th Cir. 1978).

**B.  Defendants Stewart Jones and Mary Rose Jones Breached Their Duty of Care**

This is an action under the court's diversity jurisdiction, and the applicable substantive law is that of the Commonwealth of Massachusetts. Under this law, landowners have a duty to exercise reasonable care to all persons lawfully on their premises. Mounsey v. Ellard, 363 Mass. 693, 297 N.E.2d 43 (1973). The duty of care owed by a property owner to the employee of an independent contractor is the same as that owed all other lawful visitors on the premises. Poirier v. Town of Plymouth, 374 Mass. 206, 228, 372 N.E.2d 212, 227 (1987) ("Recognition that an employee of an independent contractor should not be made to suffer the negligence of the property owner simply would require the property owner to take those steps to prevent injury that are reasonable and appropriate under all the circumstances."

Contrary to Defendants' arguments, they did retain control over the project sufficient to create an issue for the jury, and regardless of control, Defendants owed a duty to Plaintiff, which they breached.

### 1. Lack of Control is not Dispositive, and Defendants Retained Control Over the Construction Project

Defendants assert that they retained no control over this project, and rely on Corsetti v. Stone, 396 Mass. 1, 483 N.E.2d 793 (1985) for the general rule that an employer who retains the right to control the work for which the independent contractor has been hired, then he has the duty to exercise that control with reasonable care for the safety of the independent contractor's employees. Defendants' reliance on the Corsetti decision is misplaced. Notwithstanding the general rule, the courts (including in Corsetti) have made it clear that: "Whether an employer has sufficient control over part of the work of an independent contractor to render him liable . . . is a question of fact for the jury." Corsetti at 483 N.E.2d p.798. The court in Corsetti in fact denied summary judgment to the defendant seeking to assert the independent contractor defense. Id., Santella v. Whynott, 27 Mass.App.Ct. 451, 538 N.E.2d 1009 (1989) (summary judgment denied); Cheschi v. Boston Edison Co., 39 Mass.App.Ct. 133, 654 N.E.2d 48, 51 (1995) (jury question presented).

To insulate themselves from liability, the Joneses must show, beyond any dispute, that Boland was " **entirely** to do the work in his own way, and that there is no evidence to the contrary. Moreover, Defendants fail even to establish a prima facie showing on this assertion, and there are facts and evidence to the contrary.

Defendants have offered no evidence, no facts, to support their claim that they retained no control over the project. The only testimony proffered is the deposition testimony of Mary Rose Jones, pages 10-12. (See Defendant's Memorandum, p. 3). A review of those pages reveals no such lack of retained control at all. It contains only the following exchange regarding their relationship with Boland:

> Q.   *And generally what work was Boland to do? I don't need the specifics, but generally what were they to do?*
> A.   *He was our contractor, so he was responsible for getting it done.*
> Q.   *Okay. But what renovations or remodeling was being done?*
> A.   *We added an addition – we actually did two additions at the same time, one on the back of the house and one on the side of the house. And he reroofed our barn*

3

> *and our house at the same time. So he was responsible for all of that. And we put in a new septic system.*

(Ex. 1, Deposition of Mary Rose Jones, 12:1-13).

Nothing in this testimony establishes that the Joneses retained no control over the project.

The only other evidence proffered by Defendants is the building permit, and counsel's assertion that: (1) it was issued to Boland, not them; and (2) therefore they had no duty to comply with the codes stated on it ("Mass's Building Code and all other applicable State, Local and Federal laws and regulations"). However, the Building Permit does not state to whom it was issued, and Thomas Boland could not remember whether he obtained the permit or the Joneses did. (Ex. 2, Deposition of Thomas Boland, pp. 57-58).

Under the circumstances, Defendants have failed even to establish their initial burden. There is, moreover, direct evidence to the contrary, that is, that Defendants retained at least some control over the project. Mrs. Jones, above, testified "[w]e put in a new septic system." In addition, Mrs. Jones admitted that she required Boland to hire a specific roofing subcontractor: Seamless Metals Roofing (Ex. 1, Deposition of Mary Rose Jones, 10:4-22).

There is a further exception to the independent contractor rule, and a further reason why summary judgment is inappropriate. Specifically: "one who hires an independent contractor to perform work which is inherently dangerous is liable for failure to take precautions." Whalen v. Shivek, 326 Mass. 142, 150, 93 N.E.2d 393, 398 (1950); Id., Vertentes v. Barletta, 392 Mass. 165, 169, 466 N.E.2d 500, 502 (1984).

Whether or not work is inherently dangerous is a question of fact for the jury. Certainly a jury could conclude that working on a roof 30 feet above the ground is inherently dangerous work.

"Summary judgment may not be granted where there is the slightest doubt as to the facts," Morrissey v. Proctor & Gamble, 379 F.2d 675, 677 (1st Cir. (Mass.)) 1967. Defendants' Motion on this issue must be denied.

## 2.   Whether or Not the Defendants Stewart Jones and Mary Rose Jones Breached Their Duty of Care to Plaintiff is a Question of Fact for the Jury.

Under Massachusetts and Federal law, issues of negligence and breach of duty are best left to the jury. Quincy Co-Op Bank v. A.G. Edwards & Sons, Inc., 655 F.Supp. 78 (D. Mass. 1986); Appleby v. Daily Hampshire Gazette, 395 Mass. 32, 37, 478 N.E.2d 721, 724 (1985) ("Summary judgment is rarely appropriate in settling the merits of a negligence case.").

The courts are very reluctant to decide these issues by summary judgment. This case fits squarely within that reluctance. U.S. v. Porter, Morrissey v. Proctor & Gamble, above. Defendants argue that the court should rely on particular facts and testimony to the exclusion of others. Their argument therefore, for summary judgment purposes, is frivolous.

Their first argument is that Robert Dade told Thomas Boland on Friday that he would begin the main house roof work on Monday,[1] but went onto the roof Friday to take measurements without telling anyone, and without determining whether the skylight holes had been cut. (Defendants' Memorandum, p. 5).

Robert Dade denies telling Boland that he would begin work on the main roof on Monday, or that he would not be on the roof at all until then. He and Boland were, in fact, on the roof at the time Boland was describing generally where the skylights **would be** going in. However, that portion of the roof was covered in tarpaper but failed to tell Dade that the skylight holes were already cut and papered over. (Ex. 3, Deposition of Robert Dade, 40:14-41:13). Given that Dade was told where the skylights **would be**, and did not tell Dade that the holes had been cut, the jury is entitled to conclude that he would not know that the holes had been cut and papered over.

Defendants' second pair of facts to support their argument that they were not negligent are: (1) he accompanied Boland into the Jones kitchen and was shown the skylights cut, and open to the sky, and (2) Boland marked the tarpaper over the holes (Defendants' Memorandum p. 5). They argue first that the holes were not concealed from view. This argument is specious. They were covered by tarpaper. Co-defendant Boland testified that the "marked" the holes with a graphite pencil to show where the paper was to be cut (Ex. 2, Deposition of Boland, 25:10-26:9. Graphite on black tarpaper would <u>not</u> be visible to someone walking on a roof which

---

[1] Defendants seek to justify reliance on this alleged statement. However, even if it were true, it would have been said only to Boland, not to them. Therefore, they did not rely on it in any respect (even if it was actually said).

5

Boland himself described as "extremely steep" (Ex. 2, Deposition of Boland, 45:19, 46:23). Again that, at the very least, is a jury issue. As to whether Mr. Dade participated in the walkthrough, Defendants are fully aware that Dade, in his deposition, denies having been a part of the walkthrough. (Ex. 2, Deposition of Robert Dade, 47:5-48:12). This is a frank, simple factual dispute. It is for the jury to decide whom to believe. This argument is utterly specious. It is frivolous and in violation of F. R. Civ. P. Rule 11.

Defendants Joneses admit that they were aware that holes had been cut in their roof, covered with tarpaper, and therefore hidden from view for someone walking on their steeply pitched roof. They further knew that the holes had not been covered by plywood or some other adequate material. And they knew that Plaintiff Robert Dade and/or members of his crew would be walking on the roof at any time. They knew that they had participated in the creation of a trap, one which could cause severe injury, even death, but did nothing to eliminate this hazard. Their defense that Dade was made aware of the hazard, if it is a defense at all (there is no provision in either the state or federal regulations for pointing out, marking or otherwise warning about skylight holes), is a contested issue of fact.

Finally, "although certain conditions may be characterized as 'known' or 'obvious' to invitees, a land owner's duty of reasonable care may still require that he take reasonable steps in order to protect invitees from such harm." Deibert v. Baur Bros. Const., 141 Ill.2d 430 at 435-36; Ward v. K-Mart Corp., 136 Ill. 2d 132 at 156. For example, the defendant may reasonably be expected to anticipate that invitees in the general exercise of ordinary care may fail to avoid an obvious risk because they are distracted or momentarily forgetful. See Deibert, 141 Ill.2d at 436; Ward, 136 Ill.2d at 156; Clifford v. Wharton Business Group, L.L.C., 353 Ill.App.3d 34, 42-43 (2004). Thus, a genuine issue of material fact exists as to whether the Joneses should have reasonably anticipated that roofers would become distracted and preoccupied in measuring or otherwise working on the roof, and disregard the risk posed by the skylight holes. (Ex. 4, Bradshaw v. ITT Sheraton Corp., 19 Mass.L.Rptr 561 (2005), Kern, J.)

Summary Judgment is singularly inappropriate.

## CONCLUSION

This matter presents genuine issues of material fact to be decided by a jury. Furthermore, the law does not support Defendants' arguments. Summary judgment should be denied.

THE PLAINTIFF ROBERT DADE

By: _____
John A. Cvejanovich, BBO #549285
O'CONNELL, FLAHERTY & ATTMORE, LLC
1350 Main Street
Springfield, MA 01103
(413) 747-1773 (phone)
(413) 746-1529 (fax)

CERTIFICATE OF SERVICE AND COMPLIANCE

I certify that on 3/3/06 I served the within document, within the time standards provided therefor, on the parties to this action by mailing a copy, postage prepaid, to all counsel of record.

_____
John A. Cvejanovich

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-30172-MAP

| | |
|---|---|
| ROBERT DADE,<br>*Plaintiff* | )<br>)<br>)<br>) STATEMENT OF MATERIAL FACTS<br>) IN SUPPORT OF PLAINTIFF'S OPPOSITION<br>) TO MOTION OF STEWART JONES |
| BOLAND BUILDERS, INC., THOMAS<br>M. BOLAND, STUART JONES AND<br>MARY ROSE JONES,<br>*Defendants* | ) AND MARY ROSE JONES<br>) FOR SUMMARY JUDGMENT<br>)<br>)<br>) |

1. When Robert Dade first came on the site of the Jones renovation job, or the next morning, the main house roof had been installed and tarpapered (Ex. 3, Deposition of Robert Dade, 39:22-40:23).

2. On Friday, September 7, Robert Dade met with Thomas Boland on the roof of the Jones residence (Ex. 3, Deposition of Robert Dade, 4:14-24, 43:4-17, 44:2-8).

3. While on the roof, Boland pointed generally to the area of the roof where he would be installing skylights (Ex. 3, Deposition of Robert Dade, 40:19-41:10, 44:2-8).

4. Boland did not inform Dade that the skylight holes had, in fact, already been cut (Ex. 3, Deposition of Robert Dade, 41:10-13).

5. Dade told Boland that he would begin work on the roof Monday September 10, but also that he would have to measure the drip edge to get (determine) the amount needed (Ex. 3, Deposition of Robert Dade, 39:19-40:13).

6. At no time did Boland or either Stuart or Mary Rose Jones inform Robert Dade that the skylight holes had been cut and/or papered over (Ex. 3, Deposition of Robert Dade, 41:10-13).

7. At no time did Robert Dade participate in a walkthrough of the house, or stand in the kitchen, and have the skylight holes pointed out to him (Ex. 3, Deposition of Robert Dade, 46:4-9, 47:5-24, 48:8-12).

8. Robert Dade returned to the roof later on September 7 with Mike Moffit to measure the drip edge, he stopped onto the papered skylight hole and fell, injuring himself (Ex. 3, Deposition of Robert Dade, 44:2-15, 50:11-19).

9. Thomas Boland testified that he cut the skylight holes in the Jones residence and covered them with tarpaper the next day (Ex. 2, Deposition of Thomas Boland, 14:12-13, 16:23-17:8, 28:16-18).

10. The tarpaper was black and Boland marked the skylight locations with grey graphite pencil (Ex. 2, Deposition of Thomas Boland, 25:16-22, 26:7-9, 28:19-20).

11. There were no barricades, or construction tape or other indications that the skylight had been cut (Ex. 2, Deposition of Thomas Boland, 25:23-26:6).

12. On October 26, 2001, Thomas Boland gave a dictated statement, including that he had "covered the skylight [holes] with 30 pound felt previously a week before or so," that is, a week before the date of Robert Dade's injury (Ex. 2, Deposition of Thomas Boland, 35:5, 36:9, 39:3-40:6, 40:18-23; Ex. 2A, Statement of Thomas Boland (retyped)).

13. The Jones house roof had "such a steep roof that you had to run up it," that is, it was extremely steep (Ex. 2, Deposition of Thomas Boland, 45:18-46:23; Ex. 2A, Statement of Thomas Boland (retyped)),

14. Thomas Boland was aware that Robert Dade would be measuring the roof on the day of the accident (Friday, September 7, 2001) (Ex. 2, Deposition of Thomas Boland, 51:5-17).

15. It is unknown whether Thomas Boland or Defendants Stewart Jones and Mary Rose Jones obtained the building permit for this construction (Ex. 2, Deposition of Thomas Boland, 57:4-58:16).

16. According to Mary Rose Jones, Robert Dade attended the walkthrough, and was shown the skylights a couple of days before the accident (Ex. 1, Deposition of Mary Rose Jones, 22:10-14, 28:18-20).

17. The building permit from the Town of Huntington does not state to whom it is issued, nor who applied for it.

18. Thomas Boland could not recall whether he applied for the building permit (Ex. 2, Deposition of Thomas Boland, 57:7-12).

19. Defendants Mary Rose Jones and Stewart Jones retained control over the renovation of their home in that they required Boland to hire Seamless Metals (Robert Dade, Sr.) to install the new roof (Ex. 1, Deposition of Mary Rose Jones, 10:4-22).

20. Defendant Mary Rose Jones testified that she and Stewart Jones retained further control over the renovation in that they "put in [the]new septic system" (Ex. 1, Deposition of Mary Rose Jones, 12:6-13).

THE PLAINTIFF ROBERT DADE

By: _____
John A. Cvejanovich, BBO #549285
O'CONNELL, FLAHERTY & ATTMORE, LLC
1350 Main Street
Springfield, MA 01103
(413) 747-1773 (phone)
(413) 746-1529 (fax)

CERTIFICATE OF SERVICE AND COMPLIANCE

I certify that on 3/3/06 I served the within document, within the time standards provided therefor, on the parties to this action by mailing a copy, postage prepaid, to all counsel of record.

_____
John A. Cvejanovich