# WATSTEIN & WATSTEIN, P.C.
# Attorneys



HERBERT WATSTEIN
JULIUS WATSTEIN

---

DANIEL L. HEALY*
RICHARD A. KNAPP
MAURA A. MC INNIS
*Also admitted in District of Columbia

December 17, 2003

Ms. Kathleen Ronchi, AIC
General Casualty
123 Interstate Drive
P.O. Box 1149
West Springfield, MA 01090

> Re: Our Client: Robert Dade
> Your Insured: Mark Boland
> Your Claim #: Pt. 3311
> Date of Loss: 09/07/01

Dear Ms. Ronchi:

Following discussion with our client, Robert Dade, and a review of his case file, we believe the above-captioned claim is ready for settlement discussion and the following is relevant:

**LIABILITY:**

Robert Dade reported to work at a subcontracting job on September 7, 2001. Mr. Dade was hired by a contractor, Tom Boland, to install a metal roof on a home and garage located at 169 Worthington Road, Huntington, Massachusetts. On said date, at said location, Mr. Boland took Mr. Dade onto the already-existing plywood roof, which was then covered with tar paper. Mr. Boland explained to Mr. Dade the work he wanted done on the roof and indicated with vague gestures where the skylights would be installed. At no time did Mr. Boland indicate that the openings for the skylights had already been cut into the roof. These openings were not visible to Mr. Dade because a layer of tar paper had already been placed over the entire roof. Mr. Dade began to work at the site and, while in the process of taking measurements on the roof of the residential home, fell through a skylight opening, landing approximately thirteen feet below.

Kathleen Ronchi
December 17, 2003
Page 2

## INJURIES:

### Summary of Medical Treatment

Noble Hospital
**115 W. Silver Street**
**P.O. Box 1634**
**Westfield, MA 01086-1634**

9/7/01 – Mr. Dade was examined and treated by Brian Sutton, M.D. and Richard M. Kane, M.D. Mr. Dade reported pain and swelling in the right foot. Emergency records note that he had scratches on his forehead and forehead and abrasions on the proximal portions of his arms. X-rays were taken. He was diagnosed with a fracture of the right foot, fractures of the second through fourth right metatarsals, an S/P dorsal dislocation of the right fifth metatarsophalangeal joint and with multiple abrasions and contusions. The treatment plan involved elevation and control of the swelling. Dr. Kane advised Mr. Dade that he would likely need open reduction and internal fixation and that pins would be protruding. He was admitted to the hospital through September 10, 2001

9/8/01 – 9/9/01 – Mr. Dade was still hospitalized at Noble Hospital. On September 9, 2001, Mr. Dade underwent open reduction and internal fixation of the fractures of the third and fourth metatarsal necks, right and closed reduction on the fracture metatarsal neck, right second. Dr. Kane performed the procedure. The surgery required insertion of metal pins which protruded through the plantar aspect of the foot near the base of the toes. A splint was applied as well.

9/10/01 – Mr. Dade was discharged with crutches and a prescription for Percocet. He was instructed to wear a post-operative shoe. The Noble Hospital discharge summary indicates an additional procedure – that a closed reduction of the dislocation of the fifth metatarsophalangeal joint was performed by Dr. Sutton.

**Richard M. Kane, M.D.**
**72 Mill Street**
**Westfield, MA 01085**
10/2/01 – Mr. Dade had an x-ray taken of his right foot. According to Dr. Kane, the previously noted fracture at the neck of the second metatarsal cannot be identified on this study.

Kathleen Ronchi
December 17, 2003
Page 3

10-8-01 The pins were removed from Mr. Dade's foot.

10/23/01 – A follow-up examination revealed Mr. Dade's foot was loosening up nicely and his toes showed good motion. The pin sites showed no sign of infection. Mr. Dade was referred to physical therapy.

12/3/01 – X-rays were taken of Mr. Dade's right foot. They revealed a mild ostopenia of the bones of the foot. There are healing fractures noted at the necks of the second, third and fourth metatarsals. The second is in an anatomic position. The third and fourth show minimal angular deformity but are within the bounds of position and alignment that are acceptable. Callus formation is evident. The records noted that Mr. Dade continues to improve but has a sense of stiffness in the right foot/ankle. Dr. Kane reported the range of motion was satisfactory.

3/18/02 – An x-ray of the right foot revealed evidence of healed fractures at the metatarsal neck of the third and fourth metatarsal. There may be mild valgus and plantar angulation of the fourth metatarsal. Mr. Dade reported that he still has not worked a full day or full week since the fall due to pain in his right foot. He works a shortened day – only six hours – and a shortened week – generally not working on a Thursday or Friday.

7/22/02 – X-rays were taken of the right foot. No significant abnormality was found. There was noted to be a "small ossicle which possibly represents an avulsion fracture from the proximal portion of the dorsal aspect of the navicular." Minimal deformity is noted of the distal fourth metatarsal at the site of the prior known fracture with one or two millimeters of shortening, but no significant angulation or deformity. Mr. Dade reported that he has some residual discomfort in the foot. He stated that he has not been able to continue his work as a roofer and now does siding. This way, he can work on a level platform, ather than working on slanted roof surfaces. Mr. Dade indicated that within the last four to six weeks, he has noticed some snapping about the ankle. He placed his finger between the Achilles and medial malleolus when indicating where the snapping was originating. Mr. Kane explained that it was probably due to some catching of the tendon, probably related to scar formation secondary to the injury that he sustained. The recommendation was for flexibility exercises, heel cord stretching and a trial of an inlay with a better arch support.

2/22/03 – Dr. Kane reported that Mr. Dade has sustained a permanent partial impairment of the right foot/ankle of 10%, which is compatible with a 7% permanent partial impairment of the lower limb. He stated it is "less likely than not that deterioration of his condition will occur such that additional treatment will be necessary in the future."

Kathleen Ronchi
December 17, 2003
Page 4

**Special Damages**

| | |
|---|---|
| Huntington Lions Club Ambulance (9/7/01) | $ 350.15 |
| Noble Hospital (9/7/01-9/10/01; 9/21/01; 10/08/01) | $ 8,427.36 |
| Richard M. Kane, M.D. (9/9/01; 10/2/01; 9/21/01; 10/8/01; 10/23/01; 12/3/01; 3/18/02; 7/22/02) | $ 2,885.00 |
| Westfield Emergency Physicians (9/7/01) | $ 271.00 |
| ASI of Westfield (9/7/01) | $ 704.00 |
| Westfield Radiology Associates (9/7/01; 9/9/01; 9/10/01) | $ 120.00 |
| Prescriptions | $ 229.21 |
| Lost wages | $25,733.60 |
| **TOTAL SPECIAL DAMAGES** | **$ 38,720.32** |
| Additional future treatment | $_____ |
| **GRAND TOTAL SPECIAL DAMAGES** | **$38,720.32** |

Kathleen Ronchi
December 17, 2003
Page 5

### PERMANENCY AND CAUSATION:

On February 22, 2003, Dr. Richard M. Kane opined that:

*"Mr. Dade has sustained permanent partial impairment of the right foot/ankle of 10%, which is compatible with a 7% permanent partial impairment of the lower limb."*

In terms of causation, Dr. Richard M. Kane has stated that:

*"The injuries to Mr. Dade's right foot/ankle and the permanent disabilities he has sustained are directly related to his fall from a roof on September 7, 2001.*

Based on the above, my settlement demand is $275,000.

Very truly yours,
WATSTEIN & WATSTEIN, P.C.

HERBERT WATSTEIN

/pgv

Enclosures